BAXTER v. BILLINGS et al.

(Circuit Court of Appeals, Eighth Circuit.    November 15, 1897.)

No. 873.

ATTORNEY AND CLIENT—CONTRACT FOR FEES.
        When one agrees to pay a certain compensation for the services in a specified matter of two attorneys named, that contract is not performed, and that compensation cannot be recovered, when one of them dies before the agreement is substantially performed.    The contract is one of personal trust and confidence, and its terms are not fulfilled though the surviving attorney associates with himself others of equal or greater ability, and carries the litigation to a successful conclusion.

Appeal from the Circuit Court of the United States for the District of Colorado.

This is an appeal from a decree sustaining a demurrer to and dismissing a bill exhibited in the court below by Joseph N. Baxter against Margaret Billings, Margaret Cavner, Jerome B. Wheeler, and the Aspen Mining & Smelting Company to enforce and foreclose a lien for one-half of the money and property which Margaret Billings was held to be entitled to recover from Wheeler and the Aspen Company by the terms of a decree which was rendered in a suit in equity which she and Margaret Cavner brought against them in the United States circuit court for the district of Colorado.    The material facts alleged in this bill as a basis for this relief were these: On June 23, 1887, Margaret.

Billings had, and Margaret Cavner thought she had, certain rights in the Emma Mine and its proceeds, which Wheeler and the Aspen Company claimed to own by virtue of an alleged purchase from them. Baxter and one Yonley were attorneys at law and solicitors in chancery, and on that day Margaret Billings and Margaret Cavner made a written contract with them, to the effect that Baxter and Yonley should immediately push to a settlement the claims of Margaret Billings and Margaret Cavner, and, in case a settlement could not be speedily arranged, that they should immediately commence legal proceedings to determine their rights in the property known as the "Emma Mine"; that, in case a settlement of their claims could be made with Wheeler and the Aspen Company, they would pay Baxter and Yonley 20 per cent. of the net proceeds of such settlement; and that, in case no settlement could be arrived at without suit, and a settlement should be obtained after bringing such suit, they would then pay to Baxter and Yonley one-half of the net proceeds of such suit or settlement. Baxter and Yonley endeavored to obtain a settlement of these claims in the year 1887, and failed. On the 1st day of January, 1888, Yonley died. Baxter, with the consent of Margaret Billings and Margaret Cavner, associated with himself such persons as, in his judgment, would best enable him to carry into effect the agreement and the wishes of said Billings and Cavner, and on April 14, 1888, caused a suit to be commenced in the circuit court of the United States for the district of Colorado, in which Baxter appeared as the solicitor of said Billings and Cavner, and prosecuted it until the court determined by a final decree that Margaret Billings was entitled to recover from Wheeler and the Aspen Company a large amount of money and certain shares of stock in the Compromise Mining Company. About July 16, 1892, and before this final decree was rendered, Baxter notified Wheeler and the Aspen Company that he claimed a lien on the interest of Margaret Billings and Margaret Cavner in the suit which he had instituted, and in the amount of money or property which they might recover thereunder, by virtue of the written contract between them and himself and Yonley made on the 23d day of June, 1887. The prayer of the bill was that Baxter might be adjudged to have a lien upon the money and property which Margaret Billings was entitled to receive from Wheeler and the Aspen Company by virtue of her decree against them for one-half thereof, that this lien should be foreclosed, and that Wheeler and the Aspen Company should be enjoined from paying this half to Margaret Billings, and should be adjudged to pay and deliver the same to Baxter in satisfaction of one-half the amount adjudged and decreed to be paid and delivered to Margaret Billings by the decree.

Daniel Prescott, for appellant.

H. L. McNair and T. A. Green, for appellees.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A contract for the professional services of a particular attorney is an agreement of personal trust and confidence. Its chief consideration is the command which the retainer gives to the client over the learning, ability, skill, and experience which his chosen solicitor possesses. An agreement with a lawyer to commence and prosecute a suit is of the same character as a contract with an author to write a book. If the author dies, or abandons his work when it is half written, no substitute or successor can complete the book, and recover its price, because the literary ability of the original author, for the use of which the publisher contracted, has not been, and could not be, applied to it. If a lawyer dies before he has commenced, or before he has prosecuted to a decree or settlement, a litigation which he has undertaken to conduct for a certain compensation, his contract is at an

end, and no one can recover the price it stipulated, because no substitute or successor can supply to his client the use of the learning, ability, and integrity for which he contracted. If, in the case at bar, Margaret Billings and Margaret Cavner had made their contract of June 23, 1887, with Yonley alone, who died in January, 1888, before the successful suit was instituted, it is clear that there could have been no recovery of the compensation stipulated by that contract, either by Baxter or by any other substitute or successor of Yonley, however successful he might have been in its prosecution, because the services contracted for—the services of Yonley—were not rendered. The same fatal objection presents its protest to the actual contract. That was a contract for the services of both Baxter and Yonley. Under that agreement their authority to commence and prosecute the suit was a joint authority, and their duty was a joint duty. A joint authority conferred on two persons can only be exercised by the act of both. An obligation to furnish and apply to the conduct of a lawsuit the learning, ability, and experience of two particular attorneys is not performed by furnishing the services of one of them, although the services of many others of equal or superior ability are also furnished. When one agrees to pay a certain compensation for the services in a specified matter of two or more attorneys or agents whom he selects or names, that contract is not performed, and that compensation cannot be recovered, when any one of them dies, or abandons the agreement, before it is substantially performed, because the services of that one have not been furnished. McGill's Creditors v. McGill's Adm'r, 2 Metc. (Ky.) 258, 260; Morgan v. Roberts, 38 Ill. 65, 85; Moshier v. Kitchell, 87 Ill. 18, 21; Wright v. McCampbell, 75 Tex. 644, 648, 13 S. W. 293; Martine v. Society, 53 N. Y. 339, 342; Salisbury v. Brisbane, 61 N. Y. 617; Insurance Co. v. Wilcox, 57 Ill. 180, 186. The result is that the death of Yonley in January, 1888, is a complete bar to the claim of the appellant to recover, under the contract of June 23, 1887, one-half of the proceeds of the suit instituted in April, 1888.

There are two allegations found in the bill upon which the appellant seems to rely to escape from this inevitable conclusion. One is that, when the contract was made, Margaret Billings and Margaret Cavner especially desired to obtain the services of the appellant, placed special reliance upon his skill and ability as a lawyer, and associated Yonley with the appellant, and made him a party to the contract, at his suggestion. But this averment is not material. It contains no allegation of fraud or mistake in making the contract. The fact remains that the written contract is not for the skill and services of Baxter alone, but for those of Baxter and Yonley; and, where the parties have deliberately put their engagements into writing in such terms as to import a legal obligation, it is conclusively presumed that the whole engagement of the parties and the nature and extent of their undertaking is contained in the writing. Wilson v. Ranch Co., 36 U. S. App. 634, 20 C. C. A. 244, 249, and 73 Fed. 994, 999. The other allegation is that after the death of Yonley, with the consent of Margaret Billings and Margaret Cavner, the appellant associated with himself such persons as would, in his judgment, best enable him

to carry into effect the agreement and the wishes of the clients; that he commenced and prosecuted the suit to a successful issue with their consent, and did every act which it was incumbent on him to do in the premises. But this averment falls far short of an allegation that Margaret Billings and Margaret Cavner, in consideration of these services, undertook or agreed to pay to Baxter alone, or to Baxter and his associates, the same compensation which they had agreed to pay for the services of Baxter and Yonley; and without such an allegation the averment is immaterial. When Yonley died, the contract of June 23, 1887, was at an end. It had no force or virtue after the instant of his decease. Before Margaret Billings and Margaret Cavner could be bound to pay to Baxter or to him and his associates the price which they had agreed to pay for the services of Baxter and Yonley, there must be a new contract between new parties, as complete and definite as that which was originally made. There is no averment in this bill that there was such a contract. The only legal effect which the allegations to which we have referred could have would be to charge Margaret Billings and Margaret Cavner, in a proper case, with a liability to pay to Baxter and his associates what their services were reasonably worth. This bill was not brought for that purpose. It contains no prayer for the recovery of that measure of compensation. It contains no allegation of the value of the services. We are unable to find any ground upon which it can be maintained, and the decree below must be affirmed, with costs. It is so ordered.