[Civ. No. 14899.   First Dist., Div. Two.   Jan. 16, 1952.]

Estate of HARRY C. HASTINGS, Deceased.   HARRY C. HASTINGS, JR., as Administrator, etc., Appellants, v. HELEN B. TREAT et al., Respondents; SAMUEL M. SAMTER, Defendant and Appellant.

Samuel M. Samter, in pro. per., and J. Delmore Lederman for Appellants.

William H. MacKay for Respondents.

NOURSE, P. J.—On January 18, 1943, Harry C. Hastings employed A. J. Treat as his attorney to represent him in relation to a trust that had been set up by his grandfather and which was then the subject of litigation in an action pending in the superior court in San Francisco. Treat associated appellant Samter as cocounsel in the matter, with the approval and ratification of Hastings, on a contingent basis, counsel to receive 40 per cent of any recovery effected from the trust. The sum of $73,827.23 was then on deposit in escrow in a bank to await the judicial determination of the conflicting claims of Hastings and other claimants. On October 7, 1947, Harry C. Hastings died. His son, Harry C. Hastings, Jr., hereinafter referred to as Hastings Junior, was appointed administrator with the will annexed of his father's estate.

Attorneys Treat and Samter filed a contingent claim of creditors in the estate of Harry C. Hastings, claiming a lien of 40 per cent of that part of the money in escrow that might be recovered for the estate of Hastings. On July 20, 1948, Hastings Junior petitioned the superior court to accept this contingent claim of creditors Treat and Samter and to continue their employment in the matter. The remaining sole heirs of Harry C. Hastings consented to the approval of the claim, and on August 10, 1948, the court issued its order approving the claim and the continued employment of Attorneys Treat and Samter. Apparently no action has ever been taken to have this order modified, amended, vacated or set aside.

Treat died before he and Samter had made any substantial progress toward the recovery of any part of the escrowed fund. After Treat's death, Samter, with the consent and approval of Hastings Junior, requested the respondent MacKay to become associated with him as attorney for Hastings Junior in the attempt to recover for the Hastings estate any interest in this fund. Samter and MacKay further agreed that any contingent fee recovered by them as a result of their efforts on behalf of the Hastings estate should be divided in three equal shares, one each to Helen B. Treat, Samter and MacKay. Helen B. Treat is the widow and sole heir of Attorney A. J. Treat.

As a result of the cumulative efforts of Treat, Samter and MacKay the claims against the fund in escrow were compromised with approval of the superior court, the estate of Hastings to receive by the terms of the compromise the sum

of $7,500. In addition to this order granting leave to Hastings Junior to compromise the claim, the court on August 19, 1950, ordered him to pay to Samter, MacKay and Mrs. Treat $3,000 in full discharge of the estate's obligation for attorneys' fees in the litigation with the other parties to the compromise.

Hastings Junior moved the superior court to vacate that portion of the order of August 19, 1950, which awarded the $3,000 to Samter, MacKay and Mrs. Treat, and petitioned the court to order him to pay the sum of $1,500 to Samter as Samter's share of the $3,000 fee, but the court, after hearing the oral arguments of counsel and receiving their unsworn statements, denied the motion and ordered Hastings Junior to deposit the $7,500 in the bank and immediately pay therefrom $1,000 each to Samter, MacKay and Mrs. Treat. Hastings Junior and Samter are appealing from this order.

Appellants contend only that the superior court had no jurisdiction to make the order appealed from because:

1. The court had no jurisdiction to change a confirmed contingent contract between Treat and Samter as attorneys and Harry C. Hastings and make an entirely new and different contract with other parties;

2. There was no petition, complaint or pleading filed upon which the order appealed from could have been based;

3. There was no petition filed herein to set aside the order approving the contingent claim for attorneys' fees filed by Treat and Samter in this estate and said order approving said contingent claim remains in full force and effect. It is a quasi judgment against Hastings estate in favor of Treat and Samter;

4. There was no evidence under oath taken by the court at the hearing when the order appealed from was made.

The substance of appellants' first and third arguments is that the court was bound to award attorneys' fees in the manner provided for in the court's order of August 10, 1948, in the absence of some new order modifying that originally made. They argue that the order of August 10, 1948, was in the nature of a quasi judgment. In support of this line of reasoning appellants have cited *Tomsky* v. *Superior Court,* 131 Cal. 620 [63 P. 1020]. In that case, decided in 1901, an executrix had paid her attorney a retainer fee, but the probate court allowed as an expense to the executrix only a part of that fee and ordered the attorney to repay the balance. On appeal the Supreme Court held that the attorney could not

be required to repay a fee received under a valid contract with the executrix. The effect of this decision was not to increase the charge upon the estate, but only to cause the executrix to be personally liable under her contract with the attorney. In the present case the only effect of the order appealed from is to determine the charge upon the estate and the division of the fee allowed, hence the Tomsky case is no authority for appellants' position.

Section 910 of the Probate Code provides: "Attorneys for executors and administrators shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amounts as are allowed . . . to executors and administrators; and such further amount as the court may deem just and reasonable for extraordinary services." Section 911 of the Probate Code provides: "Any attorney who has rendered services to an executor or administrator, at any time after six months from the issuance of letters testamentary or of administration, . . . may apply to the court for an allowance upon his fees; and on the hearing the court shall make an order requiring the executor or administrator to pay such attorney out of the estate such compensation, on account of services rendered up to that time, as the court shall deem proper . . ."

■ The order of August 10, 1948, was for the payment of an indefinite and uncertain amount, not a fixed amount as required by the Probate Code, and it was therefore void. In *Estate of Rowe,* 66 Cal.App.2d 594 [152 P.2d 765], the court quoting from *Estate of McDonald,* 37 Cal.App.2d 521 [99 P.2d 1115], said: "It seems obvious from the wording of these sections of the Probate Code [referring to sections 910 and 911 above mentioned], however, that the allowance for attorneys' fees to be made by the court under the code provisions should be a definite, fixed and certain cash allowance, and not a percentage of the value of assets recovered or to be recovered for the estate, particularly of assets which are not yet finally a part of the estate and which might not become or remain a part of the estate, which was the situation in the instant case at the time the order was made. The order appealed from did not actually allow or fix a fee or an amount of compensation as provided in sections 910 and 911 of the Probate Code, but rather adopted a formula or gauge or measure for determining the amount of the fee to be allowed at some future time. . . ."

As pointed out by the court in the Rowe case, the McDonald case involved an order regarding attorneys' fees that in substance entitled the attorneys to 35 per cent of the net value of assets recovered for the estate.

Again in *Estate of Rowe,* the court at page 605 said: "The authority of the court to allow fees for extraordinary services was derived, as above shown, from sections 910 and 911 of the Probate Code. In allowing or 'establishing' such fees upon a percentage basis, rather than fixing such fees in a definite 'amount' or sum of money, as required by said section 910, the court acted in excess of its authority. The order of August 10, 1932, was void. The court therefore, in considering the petition of respondent, filed June 14, 1943, whereby respondent sought an interpretation of the order of August 10, 1932, was not bound by said order of August 10, 1932, insofar as the fees for extraordinary legal services are concerned."

In both the Rowe and McDonald cases the court made the order awarding fees on a contingent basis upon a petition of the attorneys, and in the Rowe case the court by way of dictum said, at page 603: "Our opinion is not to be construed as holding that an executor or administrator may not, with the approval of the court, make a contract upon a contingent fee basis for legal services to be rendered in the future. That question is not involved in the present appeal."

On principle there seems no reason why the probate court should be allowed, upon petition of the executor to approve a contingent fee contract between the executor and an attorney, while the same court may not make such an order upon petition of the attorney. Such contracts, having been found contra to public policy in the one case, should be so found in the other since the same considerations are present in each.

In appellants' reply brief they have introduced a new argument that seems to be inconsistent with the position taken in the opening brief. In their opening brief they argue that Samter fully performed the original contract and is therefore entitled to recover his share of the fee allowed by the terms of that contract whereas, in their closing brief, they argue that the contract is no longer of any force and effect. They point out that the original contract, which respondents argue is void, was terminated by operation of law upon the death of Treat. *Baxter* v. *Billings,* 83 F. 790 [28 C.C.A. 85], cited by appellants in their closing brief, sup-

ports this theory, and we have found no California case in point. That being the case, it seems even more certain that the court was free to disregard the order of August 10, 1948, whether because it was void or because the contract was terminated by operation of law.

The substance of this second point in the reply brief is that Samter was reemployed by Hastings Junior after Treat's death, but that MacKay was employed by Samter merely in his, Samter's, individual capacity. The trial court found otherwise, deciding that MacKay was employed by and with* the consent of Hastings Junior. The question was disputed and, since appellants tendered the issue in the informal manner herein noted, they cannot now contend that they are not bound by a finding on a disputed question of fact.

Since the court was not bound by the terms of the Treat-Samter contract either because the court order of August 10, 1948, was void or because the contract was terminated by operation of law, the court was free under section 910 of the Probate Code to make a just and reasonable distribution of the total attorneys' fee allowed. This has been done.

Appellants have cited no authority for their second and fourth points that there was no petition upon which the order could have been based and that the hearings were informal. They are foreclosed by the record. Appellants themselves petitioned the court for a division of the $3,000 fee. They requested that the hearings be informal, that the application for division be oral, and that the issue be submitted on unsworn statements. They have, therefore, no standing to complain that the court followed the requested procedure. In *Estate of De Barry,* 43 Cal.App.2d 715 [111 P.2d 728], the court, when faced with a similar issue, said at page 731: "But it could not be contended that Coyne [Samter's counterpart] was the victim of a summary proceeding. Far from it; he created the issues of his own pleading and he submitted his person to the jurisdiction of the court by appearing, pleading, giving his testimony in full and by demanding judgment in his favor. He was thereby given his day in court and had the privilege of presenting all evidence available to him to establish the affirmative of his contentions. At the trial all of the facts surrounding his services and the moneys deducted by him from the funds of the estate were fully developed. He thus nominated the probate court to determine the validity and merit of his ob-

jections to the accounts. That court having ruled upon them, appellant is in no position now to question the jurisdiction of the probate court to adjudicate the issue.''

Order affirmed.

Goodell, J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied February 15, 1952, and appellants' petition for a hearing by the Supreme Court was denied March 13, 1952.